# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| MINDY'S RESTAURANT, INC. and MARKHAM COMPANY, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | )   No. 08 C 5448 ) |
| JAMES WATTERS and MOKENA MINDY'S, INC., | ) ) ) ) |
| Defendants. | ) |

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on a motion to dismiss brought by Defendants James Watters (Watters) and Mokena Mindy's, Inc. (Mokena Mindy's). For the reasons stated below, we grant Defendants' motion to dismiss.

## BACKGROUND

Plaintiffs allege that Plaintiff Mindy's Restaurant, Inc. (Mindy's) has been in business for over fifteen years and owns proprietary rights to certain trademarks. Plaintiffs claim that Mindy's grants licenses to certain individuals and entities to own and operate Mindy's restaurants using its trademarks. Plaintiffs allege that Mindy's entered into one such licensing agreement with Watters and Mokena Mindy's in

1

1999, whereby Watters was permitted to operate a Mindy's restaurant in Mokena, Illinois (Licensing Agreement). The Licensing Agreement allegedly permitted Defendants to use the Mindy's trademark and also included a twenty-year lease for the premises where the Mokena Mindy's would be located.

According to Plaintiffs, after several years of operation, Defendants became noncompliant with their payment obligations under the Licensing Agreement and Mindy's served written notice on Defendants that the Licensing Agreement would be terminated. Plaintiffs claim that Defendants continued their operation of Mokena Mindy's and continued to use the trademarks of Mindy's. Plaintiffs brought the instant action and have included trademark infringement claims alleging violations of 15 U.S.C. § 1114(l) (Count I), unfair competition claims alleging violations of 15 U.S.C. § 1125(a) (Count II), state law claims for breach of the Licensing Agreement (Count III), state law claims for specific performance (Count IV), and state law claims for breach of a lease agreement between the parties (Count V). Defendants filed the instant motion to dismiss.

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(1) requires a court to dismiss an action when it lacks subject matter jurisdiction. *United Phosphorus, Ltd. v. Angus Chemical Co.*, 322 F.3d 942, 946 (7th Cir. 2003). If the concern of the court or party challenging subject matter jurisdiction is that "subject matter jurisdiction is not evident on the face of the complaint, the motion to dismiss pursuant to Rule 12(b)(1)

would be analyzed as any other motion to dismiss, by assuming for purposes of the motion that the allegations in the complaint are true." *Id.*; *see also Ezekiel v. Michel*, 66 F.3d 894, 897 (7th Cir. 1995)(stating that when reviewing a motion to dismiss brought under Rule 12(b)(1), this court "must accept as true all well-pleaded factual allegations, and draw reasonable inferences in favor of the plaintiff"). However, if the complaint appears on its face to indicate that the court has subject matter jurisdiction, "but the contention is that there is *in fact* no subject matter jurisdiction, the movant may use affidavits and other material to support the motion." *United Phosphorus, Ltd.*, 322 F.3d at 946. For the purpose of determining subject matter jurisdiction, this court "'may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists.'" *Ezekiel*, 66 F.3d at 897 (quoting *Capitol Leasing Co. v. Federal Deposit Insurance Corp.*, 999 F.2d 188, 191 (7th Cir. 1993)). The burden of proof in regards to a Rule 12(b)(1) motion is "on the party asserting jurisdiction." *United Phosphorus, Ltd.*, 322 F.3d at 946.

## DISCUSSION

The instant motion was originally styled as a partial motion to dismiss relating to Plaintiffs' state law claims. However, in the reply brief, Defendants raised a challenge to this court's subject matter jurisdiction over all of the claims asserted in the instant action. A party may assert a challenge to subject matter jurisdiction at any point in a litigation. *Craig v. Ontario Corp.*, 543 F.3d 872, 875 (7th Cir.

3

2008)(stating that "'[i]t has been the virtually universally accepted practice of the federal courts to permit any party to challenge or, indeed, to raise *sua sponte* the subject-matter jurisdiction of the court at any time and at any stage of the proceedings'")(quoting *Sadat v. Mertes*, 615 F.2d 1176, 1188 (7th Cir. 1980)). The court gave Plaintiffs an opportunity to respond to the newly raised argument relating to subject matter jurisdiction and Plaintiffs filed a brief addressing the issue.

     The basis of Defendants' challenge to subject matter jurisdiction is the argument that the instant action, in reality, arises out of a state law contract dispute despite the fact that Plaintiffs have attempted to also plead federal trademark claims in the complaint. Federal jurisdiction is conferred over all matters "arising under any act of congress relating to . . . trademarks." 28 U.S.C. § 1338. However, the Seventh Circuit has made it clear that federal jurisdiction does not automatically arise simply because a party includes a federal claim in the complaint or counterclaim and parties cannot invoke federal subject matter jurisdiction through "'artful pleading.'" *Hays v. Cave*, 446 F.3d 712, 713 (7th Cir. 2006)(quoting *Tifft v. Commonwealth Edison Co.*, 366 F.3d 513, 516 (7th Cir. 2004)). Under the "artful pleading doctrine" district courts look beyond the language of the complaint to assess whether a real federal question exists. *In re County Collector*, 96 F.3d 890, 896 (7th Cir. 1996).

     Defendants argue that the instant action is analogous to *Int'l Armor & Limousine Co. v. Moloney Coachbuilders, Inc.*, 272 F.3d 912 (7th Cir. 2001), where the Seventh Circuit applied the artful pleading doctrine and concluded that a declaratory judgment action premised on purported trademark violations was, in fact,

4

a purely contractual dispute. *Id.* at 916-17. In *Int'l Armor*, a dispute arose between the seller and the buyer of a stretch limousine business over the precise trademark rights conferred in the sales contract. *Id.* at 913. Both sides sought declaratory judgments that the other party's use of certain phrases were violations of trademark law. *Id.* But the Seventh Circuit found that even though trademark rights were at the center of the parties' dispute, the action was nothing more than contract dispute "recharacterized as a claim for redress under federal law." *Id.* at 914. Writing for the Court, Judge Easterbrook wrote "the only serious dispute is how the contracts . . . allocate ownership rights in the [trademark] . . . [and] the same principle leads to the conclusion that there is no federal jurisdiction." *Id.* at 916. The Court stated that the trademark issue "receive[d] scarcely a sidelong glance," at the district court level and that it was "entirely derivative" of the accompanying contract issues. *Id.*

Defendants argue that, on the face of the pleadings in this case, the federal claims raised by Plaintiffs are also entirely derivative of the state law breach of contract claims relating to the Licensing Agreement. Defendants point out that, just as in *Int'l Armor*, the origin of the instant action was a contract between the parties that conferred upon Defendants the rights to use the proprietary marks in question. Defendants suggest that, but for the dispute between the parties about the ongoing applicability of the Licensing Agreement, there would be no federal trademark issues to resolve. Thus, according to Defendants, this is also a case where, after a determination is made with respect to the ongoing validity of the Licensing Agreement, the trademark issues would receive "scarcely a sidelong glance." *Id.*

In their sur-reply brief, Plaintiffs argue that *Int'l Armor* is distinguishable in two respects. First, Plaintiffs rely upon the fact that, unlike in the instant case, there were no discrete trademark infringement claims brought by the parties in *Int'l Armor* and the action was merely for declaratory relief. Second, Plaintiffs point to the fact that the parties in *Int'l Armor* were disputing the ownership of the proprietary marks in question, whereas in this case there is no dispute that Mindy's owns the proprietary marks. Plaintiffs also rely in part on *Scandinavian Satellite System, AS v. Prime TV Ltd.*, 291 F.3d 839 (D.C. Cir. 2002), where the D.C. Circuit Court of Appeals criticized the Seventh Circuit's holding in *Int'l Armor*, stating "in our view, the Seventh Circuit's position is premised on an unduly narrow and unrealistic reading of § 1338(a)." *Id.* at 845. Plaintiffs conclude that despite the availability of contract defenses to the trademark infringement claims, such claims are discrete from the contract issues and confer upon the court subject matter jurisdiction.

We are not convinced that the instant action can be distinguished from the Seventh Circuit's holding in *Int'l Armor* and we find that Plaintiffs' federal trademark infringement claims are derivative of the breach of contract claims. Plaintiffs' first argument, that the instant action is distinguishable based on the fact that *Int'l Armor* was a declaratory judgment action that did not include actual trademark infringement claims, is unpersuasive. In *Int'l Armor*, the Court extended to trademark infringement claims principles that were already established in the copyright case of *T.B. Harms Co. v. Eliscu*, 339 F.2d 823 (2d Cir. 1964), which was previously adopted by the Seventh Circuit. *Int'l Armor*, 272 F.3d at 915-16;

*Saturday Evening Post Co. v. Rumbleseat Press, Inc.*, 816 F.2d 1191, 1194-95 (7th Cir. 1987)(adopting *T.B. Harms* in dicta); *Kennedy v. Wright*, 851 F.2d 963, 966 (7th Cir. 1988)(applying *T.B. Harms* in a patent case). *T.B. Harms* was not a declaratory judgment action and the plaintiff in *T.B.* harms brought a simple copyright claim seeking both equitable and declaratory relief. *T.B. Harms*, 339 F.2d at 825. Since *Int'l Armor* was effectively extending *T.B. Harms*, Plaintiffs in this case cannot rely on the fact that *Int'l Armor* happened to be a declaratory judgment action rather than an ordinary trademark infringement action.

    Plaintiffs' second argument, attempting to distinguish *Int'l Armor* based on the fact that the instant action involves rights effectively leased under a licensing agreement rather than rights conferred by a sales contract, is equally unpersuasive. In both the instant action and *Int'l Armor*, the operative issues involve the scope of the rights to use proprietary marks created by a contract. For the purpose of the issue before us, we see no material distinction between trademark rights leased under a licensing agreement for a designated period of time and rights entirely conferred by a sales agreement or contract. On the face of the pleadings, it is clear that, for several years, Defendants enjoyed a lawful right to utilize the Mindy's trademark, based upon a contract. Such rights might cease at the end of the contract or if there is a breach of the contract. However, as in *Int'l Armor*, the central determination to be made is whether a contract was breached. Thus, Plaintiffs have not shown that the instant action is distinguishable from *Int'l Armor* as it relates to subject matter jurisdiction.

We are not persuaded by Plaintiffs' arguments and citation to the D.C. Circuit's decision in *Scandinavian Satellite System*, which departs from the holding in *Int'l Armor*. *Scandinavian Satellite System*, 291 F.3d at 845. Notwithstanding potential disagreement by another Circuit, this court is bound by the precedent of the Seventh Circuit. *Panetti v. Quarterman*, 127 S.Ct. 2842, 2863 (2007)(stating that "[t]he District Court, of course, was bound by Circuit precedent"). Citing *Scandinavian Satellite System*, Plaintiffs argue that this court must have jurisdiction since, with respect to the federal claims considered by themselves, the contract issues would technically only arise in a defense to the trademark claims. That argument, however, is inconsistent with *Int'l Armor*, where, just as in this case, contract issues would have also technically been raised in response to the purported trademark claims. *Int'l Armor*, 272 F.3d at 914. We note that such was also the case in *T.B. Harms*, where contract issues would have technically only been raised in response to the copyright claim. *T.B. Harms*, 339 F.2d at 825. Characterizing the contract issues as responsive to the trademark issues does not eliminate the underlying reality that the contract issues in this case, as well as in *Int'l Armor*, are dispositive on the federal trademark claims and such federal claims are entirely derivative.

*Int'l Armor*, which is the law in the Seventh Circuit, stands for the proposition that district courts can and should look past the pleading of federal claims to see whether, in reality, the only issues that matter are state law issues. *Int'l Armor*, 272 F.3d at 914. Such is precisely the case here where the dispositive issue is the dispute over the Licensing Agreement after the breakdown of the relationship between the

parties. In this case, there is no true dispute over the meaning of federal trademark law or the application of federal trademark law. This is not a case where Defendants, out of nowhere, decided to misappropriate Plaintiffs' trademarks. There was an ongoing relationship between the parties. Defendants were using Plaintiffs' trademark for many years, based upon a contract. But for the dispute relating to the contract between the parties, there would not be allegations of trademark violations. Thus, the court concludes that the instant action fails to "arise under" federal law. 28 U.S.C. § 1338.

We note that other district courts in this district and around the country have reached a similar conclusion with respect to subject matter jurisdiction when faced with similar facts. *See Sheridan v. Flynn*, 2003 WL 22282378, at *4 (N.D. Ill. 2003)(remanding an action for lack of subject matter jurisdiction finding that a dispute surrounding a pending patent application was actually arising out of state law issues); *see also Border Magic LLC v. Howard*, 2007 WL 1100582, at *2 (C.D. Ill. 2007)(finding that federal subject matter jurisdiction did not exist where trademark claims were, in fact, governed under a franchise agreement and holding that, despite the pleading of federal claims in the complaint, the plaintiffs' claims were purely based on state law); *Fox v. iVillage*, 2005 WL 3157413, at *2-3 (N.D. Cal. 2005)(finding that even where the plaintiff "tried to frame the issues as if they implicated questions of federal law" the trademark issues were governed under contract and dismissal for lack of subject matter jurisdiction was warranted); *RBM Tech., Inc. v. Lash*, 2004 WL 1809867, at *3 (D. Mass. 2004)(finding that the "crux"

of a purported copyright claim was, in fact, "whether a valid contract existed between the parties and whether [the defendant] breached the contract" and holding that the court lacked federal subject matter jurisdiction); *but see Prominent Consulting LLC v. Allen Bros., Inc.*, 543 F. Supp. 2d 877, 881 (N.D. Ill. 2008)(distinguishing the action from *Int'l Armor* based on the fact that the asserted trademark claims were not "entirely derivative" since some of the trademark infringement allegations related to actions that occurred *before* a contract was entered). Thus, for all of the reasons stated above, we find that this court lacks subject matter jurisdiction over Plaintiffs' claims. We also note that the complaint identifies all parties in this action to be citizens of the state of Illinois and, as such, the court lacks diversity jurisdiction as well. 28 U.S.C. § 1332. Therefore, the court lacks jurisdiction over the instant action and we grant Defendants' motion to dismiss.

## CONCLUSION

Therefore, based on the foregoing analysis, we grant Defendants' motion to dismiss and dismiss the instant action for lack of subject matter jurisdiction.

_____
Samuel Der-Yeghiayan
United States District Court Judge

Dated: June 9, 2009